**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Case No. 3:25-cv-00242-MJN-PBS

(Judge Michael J. Newman)
(Magistrate Judge Peter B. Silvain, Jr.)

**MICHAEL DAILEY**
individually and on behalf of all others similarly situated
10670 Willow Brook Road
Washington Township, Ohio 45458

**and**

**WILLIAM EHRSTINE**
individually and on behalf of all others similarly situated
2739 Queenswood Drive
Cincinnati, Ohio 45211

**and**

**SUSAN SOUTHER**
individually and on behalf of all others similarly situated
7826 Shadowhill Way
Cincinnati, Ohio 45242

**and**

**TRAVIS DUNNINGTON**
individually and on behalf of all others similarly situated
421 Hadley Avenue
Oakwood, OH 45419

**and**

**PAUL NERONE**
individually and on behalf of all others similarly situated
2062 Richfield Drive, Apt. A
Kettering, Ohio 45420

**and**

**CYNTHIA PACKET**

individually and on behalf of all others :
similarly situated :
128 Lightner Lane :
Union, Ohio 45322 :
:
**and** :
:
**DEBRA BURS** :
individually and on behalf of all others :
similarly situated :
1513 Academy Place :
Dayton, Ohio 45406 :
:
Plaintiffs, :
:
and :
:
**THE STATE OF OHIO, ex rel. MICHAEL DAILEY, WILLIAM EHRSTINE, SUSAN SOUTHER, PAUL NERONE, and DEBRA BURS** :
:
Petitioners :
:
v. :
:
**PUBLIC DEFENDER COMMISSION OF MONTGOMERY COUNTY, OHIO** :
117 South Main Street :
Suite 400 :
Dayton, Ohio 45422 :
:
**and** :
:
**MONTGOMERY COUNTY, OHIO, OFFICE OF PUBLIC DEFENDER** :
117 South Main St :
4th Floor, Reibold Building :
Dayton, OH 45422 :
:
**and** :
:
**MONTGOMERY COUNTY, OHIO BOARD OF COMMISSIONERS** :

County Administration Building :
451 West Third Street :
Dayton, Ohio 45422 :
:
Defendants and Respondents. :
:

---

**FIRST AMENDED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND WRIT OF MANDAMUS**
**(with Jury Demand Endorsed Below)**

---

Plaintiffs Michael Dailey ("Dailey"), William Ehrstine ("Ehrstine"), Susan Souther ("Souther"), Travis Dunnington ("Dunnington"), Paul Nerone ("Nerone"), Debra Burs ("Burs"), and Cynthia Packet ("Packet") (collectively referred to herein as "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class", as defined below), by and through counsel, for their First Amended Class Action Complaint state as follows against Defendants MONTGOMERY COUNTY, OHIO BOARD OF COUNTY COMMISSIONERS ("the County"), the PUBLIC DEFENDER COMMISSION OF MONTGOMERY COUNTY, OHIO, ("the Commission"), and the MONTGOMERY COUNTY, OHIO, OFFICE OF PUBLIC DEFENDER ("the MCPDO").

**Parties, Jurisdiction and Venue**

1. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343 as Plaintiffs assert claims under 42 U.S.C. §1983. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 as said claims are so related to the federal law claims that they form one case or controversy for purposes of Article III of the United States Constitution.

2. Venue lies in this forum pursuant to 28 USC §1391(a) and Southern District Local Civil Rule 82.1 because the claims arose in Montgomery County, Ohio where at all times material to this action Defendants resided and committed the acts giving rise to this action.

3. Plaintiff Dailey is a natural person with a principal place of residence located in Washington Township, Ohio.

4. Plaintiff Ehrstine is a natural person with a principal place of residence located in Cincinnati, Ohio

5. Plaintiff Souther is a natural person with a principal place of residence located in Cincinnati, Ohio.

6. Plaintiff Dunnington is a natural person with a principal place of residence in Oakwood, Ohio.

7. Plaintiff Nerone is a natural person with a principal place of residence in Kettering, Ohio.

8. Plaintiff Burs is a natural person with a principal place of residence in Dayton, Ohio.

9. Plaintiff Packet is a natural person with a principal place of residence in Union, Ohio.

10. Defendant Montgomery County, Ohio Board of County Commissioners is a body politic and exercises all legislative authority in Montgomery County, Ohio.

11. Defendant Montgomery County, Ohio, Office Of Public Defender is located in Montgomery County, Ohio and provides legal representation to indigent criminal defendants in Montgomery County, Ohio under the auspices of Defendant Montgomery County Public Defender Commission.

12. Defendant Montgomery County Public Defender Commission was, pursuant to R.C. § 120.13, created by Defendant Montgomery County, Ohio Board of County Commissioners.

**BASIS FOR THE CLAIMS**

13. Plaintiffs bring this class action to address the gross and unlawful compensation disparities between the Public Defender's Office and the Prosecutor's Office in Montgomery County, Ohio.

14. Plaintiffs seek damages, as well as declaratory and injunctive relief, compelling Defendants to remedy their violations of Ohio law, the Equal Protection, and Due Process Clauses of the Ohio Constitution and the United States Constitution applicable to the States through the Fourteenth Amendment, and the Guarantee of Effective Assistance of Counsel mandated by the Ohio Constitution and Sixth Amendment to the United States Constitution.

15. Plaintiffs Dailey, Ehrstine, and Souther are attorneys licensed in Ohio and are currently employed by the Montgomery County, Ohio, Office of Public Defender ("MCPDO") as public defenders providing legal representation for indigent criminal defendants in Montgomery County, Ohio and began that employment sometime either before or during the period 2015 through present ("the Relevant Timeframe").

16. Plaintiff Dunnington is an attorney licensed in Ohio and was formerly employed by the MCPDO as a public defender providing legal representation for indigent criminal defendants in Montgomery County, Ohio during periods of the relevant timeframe.

17. Plaintiff Nerone is currently the Housing Case Manager in Social Work within the MCPDO.

18. Plaintiff Burs is currently an Administrative Assistant in the MCPDO.

19. Plaintiff Packet was formerly employed by the MCPDO as the Client Engagement Team Leader in the MCPDO.

20. The legal responsibility of the County, the Commission, and of the MCPDO, as created by the Ohio General Assembly, is to provide constitutionally adequate legal representation for indigent criminal defendants who are financially unable to pay for their own lawyer, as required under the 6th Amendment to the Constitution of the United States and Article 1, Section 10 of the Constitution of the State of Ohio.

21. The right to adequate legal representation is a clearly established constitutional right under both the United States and Ohio Constitutions and has been since 1963 when the case of *Gideon v. Wainwright* held that the Sixth Amendment right to counsel is a fundamental right and applies to states through the Fourteenth Amendment, meaning indigent defendants facing felony charges have the right to a court-appointed attorney.

22. To be meaningful and effective, the right to adequate legal representation must be guaranteed *in advance* of an accused defendant's criminal trial. Constitutionally adequate representation, by practical necessity, and as established by the Ohio Revised Code and OAC 120-1-06 , requires that public defenders be adequately paid and have an adequate budget to have access to resources equivalent to those of the County Prosecutor during the trial preparation phase of a case and during trial proceedings.

23. In fact, this constitutional right has been enunciated to attach at the earliest stages of a criminal proceeding, for example during arraignment and preliminary hearings. *Hamilton v. Alabama*, 368 U.S. 52 (1961); *White v. Maryland*, 373 U.S. 59 (1963).

24. And, while criminal defendants have a right to appeal adverse decisions that may have resulted, in whole or in part, from a lack of adequate representation at trial, this right is not

equivalent to the Sixth Amendment constitutional right to have adequate legal representation prior to and during trial proceedings.

25. The right to appeal an adverse decision often leaves a criminal defendant bound by an inadequate and poorly developed record from trial proceedings, which creates extreme prejudice and prevents a criminal defendant from pursuing an effective appellate remedy. This means that the Sixth Amendment right to adequate counsel is never fulfilled for the criminal defendant who did not receive adequate legal representation during trial proceedings, and who is left with the proposition of pursuing an appeal with an inadequate record that is unlikely to provide an effective remedy, and is unlikely to succeed even if a different outcome would have resulted from a trial at which they had adequate legal representation.

26. Public defenders, including the representative Plaintiffs named in this Amended Complaint, are uniquely situated to raise and litigate the issue of inadequate funding and failure to meet the parity requirements of the OAC, which it is unlikely a criminal defendant would ever have the ability to discern or the standing to raise during their criminal trial proceedings.

27. Criminal defendants are unable to litigate this issue as class representatives in a class action format. This class action case is an efficient and effective mechanism for public defenders, who have a continual special relationship with the current criminal defendants whom they represent, are integrally involved in providing adequate legal representation to these defendants on a daily basis in order to meet the United States and State of Ohio's constitutional obligation to provide adequate legal representation established by OAC 120-1-06, and whose compensation and livelihood depend upon such compliance.

28. The fact that their compensation and livelihood depend upon compliance with the constitutional requirements of OAC 120-1-06 gives public defenders such as the named plaintiffs

herein a concrete and ongoing interest in the outcome of this case in terms of both their compensation and their ability to adequately perform the duties of their jobs and meet their professional responsibilities.

29. If the unique interest of public defenders such as the named plaintiffs herein does not provide them standing to raise this issue, the issue of compliance with the OAC and specifically OAC 120-1-06 will likely never be litigated, as no other party has the same unique confluence of interests at stake to provide an incentive—and standing—to litigate the issue.

30. The Annual Reports from the Defendant Ohio Public Defender Commission attached hereto as Exhibits A through D recognize and illustrate the crisis and constitutional jeopardy that the lack of adequate funding for public defenders in Ohio—and the need for unfulfilled parity to be finally established in accordance with Ohio law—creates for criminal defendants. The Annual Reports evidence that this issue is one that is ripe for review, and that Ohio public defenders are the proper parties to raise and litigate it.

31. Since creation of the statutory mechanism authorizing County Offices of Public Defenders by the Ohio General Assembly in 1976, Ohio counties such as Montgomery County have been creating and utilizing County Offices of Public Defenders as the most efficient means of meeting the requirements of 6th Amendment to the Constitution of the United States and Article 1, Section 10 of the Constitution of the State of Ohio.

32. Pursuant to R.C. § 120.14(B), (C)(1) through (3) and (F), the Commission is legally responsible for administering the MCPDO, providing oversight and guidance for MCPDO, determining the needs of the MCPDO for staffing, facilities, and other requirements, as well as creation of the annual budget for MCPDO and recommendation of that budget to the County, and securing resources from the County that are adequate to fulfill the legal purpose and responsibility

of the MCPDO. The Commission must comply with all standards established by the state public defender, and with all statutory duties and other laws applicable to county public defenders. R.C. 120.14(F)(1)-(3).

33. Pursuant to R.C. 120.14, the MCPDO must provide to the County and the Commission annual financial and operational information. It must also provide annual budget recommendations for the funding of the office.

34. To meet the State of Ohio's legal responsibilities in accordance with the requirements of the Constitutions of the State of Ohio and United States, Ohio law requires that a public defender office receive "substantially equivalent"…"staff, facilities, equipment, supplies, and other requirements needed to maintain and operate an office of a county or joint county public defender"…"to that provided for the county prosecutor's office." OAC 121-1-06. To meet the standard of "substantial equivalence, Ohio Administrative Code Section 121-1-06 entitled "Facilities for a county or joint county public defender office" at subsection (A) requires that "[t]he salaries for public defender attorneys shall approximate and be in parity with the compensation received by a prosecutors with comparable years in practice and experience."

35. OAC 120-1-06 further requires substantial equivalence between the offices of prosecutor and public defender in terms of other resources, including things such as office space and support staff.

36. The parity requirement of OAC 121-1-06 is longstanding—and unfulfilled—in Montgomery County, Ohio, specifically, and throughout Ohio generally.

37. The Ohio Public Defender Commission has acknowledged the need for parity in compensation between prosecutors and public defenders for an equally long period of time, as a review of the Annual Reports of the Ohio Public Defender Commission reveals. Both the failure

to meet 6th Amendment Constitutional standards of representation and the inefficiency and costs associated with that failure have been noted by the Commission.

38. Exhibit A is a copy of the 2010 Annual Report of the Ohio Public Defender Commission. Here are quotes from that Report:

> The constitutional promises articulated by the United States Supreme Court in Gideon remain challenges for Ohio. Ohio's indigent defense system teeters on the precipice of a constitutional crisis as caseloads increase while funding does not. Because indigent defense is a constitutionally required service, chronic underfunding of the system logically leads to the potential for major litigation should the demands for legal services to qualified indigent criminal defendants and juvenile offenders exceed the resources necessary to provide minimal protections to Ohio's citizens.
>
> ***
>
> IV. Recommendations
>
> The need for immediate and long-term reform of Ohio's indigent defense system is real, and will surely increase as caseloads grow and funding wanes. Long-term solutions must be considered, but shorter-term fixes certainly are in the mix, given economic and political realities. The Ohio Public Defender Commission continues to maintain that the following reforms are fundamental to Ohio's promise and constitutional guarantee that indigent defense services within this State will meet Sixth Amendment standards of scrutiny.
>
> ***
>
> • Pay parity for public defenders and prosecutors will increase the quality of representation and restore fundamental fairness, while also reducing systemic costs of enhanced prison sentences and appeals and other post-trial proceedings, including new trials engendered by ineffective counsel.
>
> Report at p. 5, 10-11.

39. The same concerns over inadequate funding and recommendations for pay parity between public defenders and prosecutors are also found in the 2011 Commission Report, at Exhibit B, p. 8

40. It is likewise again found in the 2012 Commission Report, at Exhibit C p. 8, the 2013 Commission Report at Exhibit D, p. 8.

41. Clearly the issue of lack of compliance with the parity requirements of OAC 120-1-06 is an issue with which the Ohio Public Defender Commission has been concerned but has not addressed.

42. There is no adequate remedy at law for the lack of compliance with the parity requirements of OAC 120-1-06.

43. R.C. 120.33(A)(5) provides, "If any county appointed counsel system fails to maintain the standards for the conduct of the system established by the rules of the Ohio public defender commission pursuant to divisions (B) and (C) of section 120.03 or the standards established by the state public defender pursuant to division (B)(7) of section 120.04 of the Revised Code, the Ohio public defender commission shall notify the board of county commissioners of the county that the county appointed counsel system has failed to comply with its rules or the standards of the state public defender. Unless the board of county commissioners corrects the conduct of its appointed counsel system to comply with the rules and standards within ninety days after the date of the notice, the state public defender may deny all or part of the county's reimbursement from the state provided for in division (A)(4) of this section."

44. While these statutory provisions may protect the public purse by remedying a situation where funds of the Ohio Public Defender Commission are not being effectively and properly utilized in an Ohio County, the statutory provisions of R.C. 120 *et seq.* are not a legal remedy that rectifies failure to meet the constitutional parity requirement of OAC 120-1-06.

45. Any petition by Plaintiffs to the Ohio Public Defender Commission to apply these statutory provisions to Montgomery County to remedy the failure to follow the parity requirement

would be futile, as application of such provisions would only serve to further degrade and lessen the level of adequate legal representation afforded by the Plaintiffs here by the elimination of all reimbursement for their services from the State, which is the only statutory option provided to the Ohio Public Defender Commission.

46. The issue of pay parity between the Montgomery County Prosecutor's Office ("MCPO") and the Montgomery County Public Defender's Office has been an ongoing point of contention for some time between Montgomery County and the MCPDO.

47. Exhibit E, dated February 19, 2016, is a letter from Rudy Wehner, Director of MCPDO to Tim Nolan of the Office of Management and Budget of Montgomery County, Ohio. In it, Mr. Wehner requests salary parity with the MCPO for 2016 salaries, attaching salary comparisons for each office and indicating "the lack of parity continues to increase." The Supplemental 2016 Budget Request Report attached to it notes the request is to "eliminate salary compression and to bring such salaries into parity with the compensation paid to Assistant Montgomery County Prosecutors" as required by Ohio Administrative Code 120-1-06. The Request states that the only appellate lawyer in the office left its employ, and requests funds to replace that attorney, and further notes that appeals filed by the public defenders' office have dropped from 30 to 50 cases a year to "less than 20 in the past two years."

48. Mr. Wehner also notes that:

> As noted above, Ohio law calls for parity of salaries between the County Prosecutor's Office and Public Defender Office. A few years ago, the Office of Management and Budget ensured that initially starting salaries for both offices would be the same. Unfortunately, for several reasons, after a few years, the salaries of assistant public defenders fall further and further behind their counterparts at the prosecutor's office.

***

> In the short term, assistant public defender salaries need to be increased by at least $3,000 per year. This will begin to erase the disparity at some levels. This would apply to 39 lawyers employed here (not the Director).
>
> In the long term, the Public Defender Office, in cooperation with the Office of Management and Budget, would propose the establishment of pay scales with grade levels and step increases to provide an established procedure to accomplish three goals:
>
> 1) To ensure Ohio law is followed to establish salary parity between the prosecutor's office and public defender office;
>
> 2) To provide attorneys with a road map (of sorts) which would allow them to plan a potential career at the Public Defender Office and thus allow the office to retain the services of those attorneys who are dedicated to effective indigent defense;
>
> 3) To allow the budget authorities to plan long range for the necessary expenditures required to establish and maintain an effective indigent defense delivery system.

49. Attached as Exhibit F is the Supplemental 2017 Salary Request of the MCPDO from Mr. Wehner, its director, submitted to the Montgomery County Office of Management and Budget, again requesting parity with the Montgomery County Prosecutor's Office pursuant to Ohio Administrative Code 120-1-06.

50. Attached as Exhibit G is a letter dated August 19, 2021 from Theresa G. Haire, Director of the MCPDO, to John Parks, Office of Management & Budget of Montgomery County, requesting pay parity of MCPDO with the MCPO to remedy the historic disparity in salary between the offices.

51. Attached as Exhibit H is a letter dated May 7, 2024, from Theresa G. Haire, Director of the MCPDO, to John Parks of the Montgomery County Office of Management and Budget. This letter requests additional funding for the MCPDO in the amount of $677,243, to achieve parity between the MCPO and the MCPDO and to remedy "stark" and "staggering" "differences in salary and bonuses received when comparing the two offices…" Ms. Haire's letter references the attached report of Archer Company, a consulting agency, that reviewed end of year bonuses paid out by the MCPO compared to the MCPDO between 2020 to 2023 which evidences the large

disparities in bonus payments between the two offices over those years. Ms. Haire also indicates there will be further review by Archer to support anticipated salary adjustments to achieve parity in 2025.

52. Attached as Exhibit I is a letter dated May 29, 2024 from Mr. Parks of Montgomery County Office of Management and Budget, denying Ms. Haire's May 7, 2024 request for additional funding, stating that:

- The main driver in the parity issue is due to Lump Sum Payments the Prosecutor gives his staff at year-end. Lump Sum Payments, although at times are PERS eligible, have never been considered part of the base pay of a county employee. Additionally, we are unable to objectively understand the process and policy the Prosecutor utilizes in determining qualification for and the amount of Lump Sum Payments.

53. Ms. Haire responded to Mr. Parks in the letter attached as Exhibit J. She stated:

> First, I am unsure why, in your response, you indicated that the Office of Management and Budget (OMB), is "unable to objectively understand the process and policy the Prosecutor utilizes" in determining annual lump sum payments that are eligible for OPERS considerations. OMB has worked with the Montgomery County Prosecutor's Office (MCPO) for several years so that such lump sum payments can be considered salary according to OPERS regulations. In email from the Prosecutor's Office Civil Division, dated November 22, 2019 at 3:15 PM, it states:
>
> > "I am contacting you on behalf of Montgomery County regarding the providing of one-time, lump sum bonus payments to employees. I wish to verify that amounts would be considered earnable salary, pursuant to OPERS Employer Manual (pp. 20-21), if the appointing authority provides one-time, lump sum bonuses to employees that are calculated as a straight percentage (out to a tenth or quarter of a percent, i.e. 5.2% or 6.25%) of the employee's basic rate of pay, with the percentage given being determined by an evaluation of the employee's work performance and dedication over the prior year." [1]
>
> My suspicion is that this is the formula being used by the MCPO to calculate their annual lump sum payments to staff. Based on this email and the agreement reached between OPERS and Montgomery County to settle a lawsuit filed in 2018, lump sum payments can be considered for the purposes of calculating salary earned. [2]

54. Defendants have continually and intentionally ignored the parity requirement and have refused to acknowledge its applicability--both in terms of salary and other resources-- and continue to do so.

55. Upon information and belief, Defendants have recently refused to negotiate to achieve parity between the MCPO and the MCPDO for the current year, in keeping with their historic refusal to do so.

56. Defendant Montgomery County has also taken the position that the parity requirement does not apply because bonuses paid by the MCPO constitute the bulk of the disparities between the MCPO and the MCPDO. This is true despite the memorandum and Settlement Agreement attached to Ms. Haire's letter, Exhibit J, in which OPERS agrees and confirms that OPERS treats the bonuses paid by Montgomery County as "earnable salary."

57. There is no rational reason why bonuses paid to the MCPDO employees should be treated differently than bonuses paid to employees of the MCPO, or that those bonuses should be treated as anything other than "earnable salary."

58. The vast disparities in compensation and resources between the Montgomery County Prosecutor's Office ("MCPO") and MCPDO have persisted despite the clear language requiring substantial equivalence and parity under Ohio Rev. Code § 120.40 and OAC 120-1-06 between the offices.

59. Even though the Commission has represented to Plaintiffs in the past that it would and did bargain for such parity and substantial equivalence for the MCPDO, Plaintiffs have discovered that substantial equivalence between the two departments has not been adequately pursued and insisted upon to achieve compliance with OAC 120-1-06 by the Defendant Miami County Public Defender Commission.

60. The annual compensation paid to prosecutors of the MCPO has far exceeded annual compensation for public defenders of the MCPDO for every year during the Relevant Period and this disparity continues presently.

61. Perhaps the most shocking disparity arises from the practice of Mathias Heck, the County Prosecutor for Montgomery County, in requesting and accepting funding from the County for numerous vacant prosecutorial positions that go unfilled, but then distributing the funds allocated for those vacant positions as additional year end compensation to bolster the compensation of prosecutors in the prosecutor's office.

62. This practice of Prosecutor Heck is one of the areas of concern detailed in Exhibits E through J requesting parity in compensation between the Prosecutor's office and the Public Defender's office to remedy the disparities resulting from this practice.

63. For example, the highest Montgomery County Prosecutor base salary for 2023 was $191,105.60, with a lump sum of added compensation of $51,566.11, for total compensation of $242,671.71. In contract, the highest Montgomery County Public Defender salary was $171,745.60, with a lump sum added of $2,012, for total compensation of $173,757.60.

64. Such largess is not an employment "benefit" given to the Montgomery County Public Defenders, none of whom receive bonuses close to those numbers or as percentages of their salaries.

65. As a further example, for 2024, lump sum distributions of compensation in the amount of $ 1,463,497.40 were made to prosecutors of the MCPO, while lump sum distributions of only $318,518.00 were made to public defenders of the MCPDO. Out of a total pool of public funds distributed as lump sum compensation in both offices, prosecutors received 82% of those funds and public defenders received just 18% of those funds.

66. The following chart illustrates the disparities in compensation between the MCPDO and the MCPO for the years 2020 through 2024 caused by supplemental bonus income given by the MCPO to prosecutors, but not given by the MCPDO to public defenders:

| Total Bonuses given: | Montgomery County Prosecutors | Montgomery County Public Defenders |
|---|---|---|
| 2024 | $1,463,497 | $318,518 |
| 2023 | $1,839,257 | $171,960 |
| 2022 | $1,475,182 | $707,034 |
| 2021 | $814,776 | $199,048 |
| 2020 | $1,053,311 | $59,540 |

67. The following chart provides examples of compensation disparities within a five year span between representative employees of each office with similar levels of experience:

| | POSITION | EXPERIENCE | | TOTAL COMPENSATION | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | IN-OFFICE | PRIOR EXPER | 2024 | 2023 | 2022 | 2021 | 2020 | 5 year totals | 5 year difference |
| Anthony Schoen | ATTORNEY | 13 years | 3 years | $119,126.97 | $ 113,712.56 | $ 104,564.68 | $ 86,729.07 | $ 83,695.55 | $507,828.83 | $85,793.95 |
| Michael Dailey | ATTORNEY | 15 years | 0 years | $93,382.80 | $87,832.80 | $92,329.60 | $74,968.40 | $73,521.28 | $422,034.88 | |
| | | | | | | | | | | |
| Erin Claypool | ATTORNEY | 27 years | 0 years | $153,634.75 | $ 148,099.18 | $ 135,960.04 | $ 112,519.57 | $ 109,407.37 | $659,620.91 | $176,119.75 |
| Susan Souther | ATTORNEY | 29 years | 4 years | $104,677.20 | $98,690.40 | $102,860 | $88,972.60 | $88,300.96 | $483,501.16 | |
| | | | | | | | | | | |
| Carly Arnold | Legal Sec. | 7 years | ? | $56,500.37 | 50,666.41 | $46,667.74 | $40,482.20 | $38,264.91 | $232,581.63 | |
| Debra Burs | Admin. Asst. | 7 years | 10 years | $51,638.80 | $46,732.00 | $49,626.80 | $36,788.40 | $35,632.96 | $220,418.96 | |

68. These funding disparities between the MCPO and the MCPDO create huge disadvantages to the public defenders who are employed by the MCPDO. Primarily, it makes the MCPDO less competitive in the search for and hiring of qualified, competent attorneys and staff, leaving the MCPDO understaffed and overworked in comparison to the staffing of the MCPO. The reality is that this environment can only have a systemic negative impact on the

ability of the public defenders of Montgomery County to effectively defend their clients against a more highly compensated and, as a result, better staffed, and thus better prepared prosecutor's office.

69. Additionally, employees of the MCPO received benefits and perquisites not offered to the employees of the MCPDO, such as parking reimbursement.

70. For example, Plaintiff Dailey teaches at a local law school, and is frequently told by students that they are pursuing employment with the prosecutor's office instead of the public defender's office due to the additional compensation received by employees of the prosecutor's office.

## CLASS ACTION ALLEGATIONS

71. **Class Definition:** Plaintiffs bring this action pursuant to Ohio Rule of Civil Procedure 23 on behalf of two classes of similarly situated individuals (the "Class"), defined as follows:

> Class 1: All past and present attorney employees of the Montgomery County Office of the Public Defender during the years 2015 to present.
>
> Class 2: All past and present non-attorney employees of the Montgomery County Office of the Public Defender during the years 2015 to present.

72. **Numerosity:** Upon information and belief, each Class consists of more than one hundred members and accordingly the Classes are so numerous that joinder of all Class members is impractical. Although the exact number and identities of each Classes member is presently unknown, that information can be ascertained through discovery. Class members can easily be identified through Defendants' employment records.

73. **Commonality and Predominance:** All members of each Class were subject to and deprived of a statutory and contractual entitlement to compensation benefits through a uniform

course of conduct. Specifically, Defendants' improper and illegal failure to provide “substantially equivalent” salaries and other benefits of employment to achieve parity between the MCPO and the MCPDO.

74. Questions of fact presented which are common to the members of the Classes include (1) whether the pay scale and structure for attorneys in the MCPDO is designed to satisfy the “sufficient,” “substantially equivalent,” “approximate,” and “parity” requirements of O.A.C. 120-1-06; (2) whether the pay scale and structure for non-attorneys in the MCPDO is designed to satisfy the “sufficient,” “substantially equivalent,” “approximate,” and “parity” requirements of O.A.C. 120-1-06; (3) whether funding provided by the County to the MCPDO is sufficient to permit to satisfy the “sufficient,” “substantially equivalent,” “approximate,” and “parity” requirements of O.A.C. 120-1-06; (4) whether the members of the Classes have been denied other benefits of employment, such as parking reimbursement and Ohio Public Employee Retirement System employment credit, because of Defendants’ failure to comply with the “sufficient,” “substantially equivalent,” “approximate,” and “parity” requirements of O.A.C. 120-1-06.

75. Questions of law which are common to the members of the Classes include (1) whether the requirements of O.A.C. 120-1-06 are incorporated into the Class members’ employment contracts by operation of law; (2) whether the requirements of O.A.C. 120-1-06 are directly enforceable by the Class members against Defendants; (3) whether the payment of substantial bonuses by the MCPO without the County funding similar bonus payments for the MCPDO violates the “sufficient,” “substantially equivalent,” “approximate,” and “parity” requirements of O.A.C. 120-1-06; (4) whether Class members have a protected property interest in receiving substantially equivalent pay and benefits as required by OAC 120-1-06; (5) whether Defendants’ failure to comply with the “sufficient,” “substantially equivalent,” “approximate,”

and "parity" requirements of O.A.C. 120-1-06 legally impairs the Class members' job duties to meet the requirements of the Sixth Amendment to the Constitution of the United States and Article I, Section 10 of the Constitution of the State of Ohio to provide competent, adequate counsel to indigent criminal defendants; (6) whether Defendants' failure to comply with the requirements of O.A.C. 120-1-06 deprived the Class members of due process of law; (7) whether whether Defendants' failure to comply with the requirements of O.A.C. 120-1-06 deprived the Class members of the equal protection of the laws; (8) whether Defendants owed the Class members a fiduciary duty to comply with the requirements of O.A.C. 120-1-06; (9) whether MCPDO's representations and promises that it would compensate the Class members on par with employees of the MCPD is legally actionable.

76. These common questions of law and fact predominate over questions affecting individual class members.

77. **Typicality:** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and Class members were all wrongfully deprived of as a result of Defendants' singular unlawful course of conduct in illegally failing to provide "substantially equivalent" salaries and other benefits of employment to achieve parity between the Montgomery County Prosecutor's Office and the Montgomery County Office of the Public Defender.

78. **Adequacy:** Plaintiffs will adequately represent the interests of the Class and do not have adverse interests to the Class. Plaintiffs have retained competent counsel who have extensive experience litigating class actions such as this one.

79. **Superiority:** A class action is the superior method for the quick and efficient adjudication of this controversy. If individual Class members prosecuted separate actions it may

create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.

**FIRST CAUSE OF ACTION**
**42 USC §1983 – Violation of Equal Protection Clause**

80. Plaintiffs incorporate the foregoing allegations as if fully restated here.

81. Plaintiffs and Class Members are entitled to equal protection of the law under both the Ohio and U.S. Constitutions.

82. Plaintiffs and Class Members are or were employed as full-time employees of the County Public Defender's Office and perform legal services comparable in scope and complexity to those performed by employees of the County Assistant County Prosecutors.

83. Despite equivalent qualifications and responsibilities, Plaintiffs and similarly situated employees of the Public Defender's office are paid significantly less than their counterparts in the County Prosecutor's Office.

84. This disparity has persisted despite clear statutory language requiring parity, and despite Plaintiffs' right to equal protection and equal treatment under the law. See Ohio Rev. Code § 120.40 and OAC 120-1-16.

85. The disparity in compensation lacks any rational basis and adversely impacts the recruitment, retention, and morale of public defenders, as well as causing monetary damages to Plaintiffs.

86. Defendants acted under color of state law, and while acting under color of state law, subjected Plaintiffs to conduct that deprived Plaintiffs of rights and privileges under the U.S. Constitution, including but not limited to the 14th Amendment.

87. As a proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members have suffered and will continue to suffer damages, and in addition have and will continue to suffer irreparable harm, including violations of their Fourteenth Amendment rights to liberty, due process, and equal protection.

88. Plaintiffs and Class Members are entitled to recover compensatory damages in an amount to be determined at trial, plus costs and attorneys' fees.

89. Plaintiffs and Class Members are further entitled to equitable relief, including declaratory and injunctive relief requiring Defendants to compensate them on an equal basis to similarly situated employees of the County Prosecutor's Office.

## SECOND CAUSE OF ACTION
## Breach of Contract

90. Plaintiffs incorporate the foregoing allegations as if fully restated here.

91. There exist express and/or implied contract(s) between Plaintiffs/Class Members and the County relating to Plaintiffs' compensation.

92. With respect to written contracts, Plaintiffs have not attached copies of the contractual documents here because they are still in the process of determining the documents which comprise the contracts and, in addition, Defendants are already in possession of all such contractual documents.

93. The law existing at the time of these contracts, including OAC 120-1-06 which requires Defendants to compensate Plaintiffs and Class Members substantially equivalent to their counterparts in the County Prosecutor's Office, is part of the contracts of employment by operation of law.

94. Defendants have breached their contracts with Plaintiffs and Class Members by failing to provide compensation and benefits to Plaintiffs and Class Members in parity with that provided to employees of the County Prosecutor's Office.

95. Defendants' actions are intentional, known by Defendants to violate the parity requirements of OAC 120-1-06, and in bad faith.

96. Plaintiffs and Class Members have suffered damages as a proximate result of Defendants' conduct.

97. Plaintiffs and Class Members are entitled to recover compensatory damages in an amount to be determined at trial, plus punitive damages, costs and their attorneys' fees.

## THIRD CAUSE OF ACTION
## Promissory Estoppel

98. Plaintiffs incorporate the foregoing allegations as if fully restated here.

99. Plaintiffs and Class Members provided their services as public defenders under the expectation, and based upon representations and promises made by Defendants, that Plaintiffs/Class Members would be compensated on par with employees of the County Prosecutor's Office.

100. Plaintiffs and Class Members relied to their detriment on the representations and promises of Defendants.

101. Plaintiffs and Class Members have suffered damages as a proximate result of Defendants' conduct.

102. Plaintiffs and Class Members are entitled to recover compensatory damages in an amount to be determined at trial, plus costs and their attorneys' fees.

## FOURTH CAUSE OF ACTION
## 42 U.S.C. §1983 – Violation of Due Process Clause

103. Plaintiffs incorporate the foregoing allegations as if fully restated here.

104. The Fourteenth Amendment to the U.S. Constitution provides "nor shall any State deprive any person of life, liberty, or property, without due process of law."

105. Plaintiffs and Class Members have a protected property interest in their right to receive substantially equivalent pay and benefits as that provided to their counterparts in the County Prosecutor's Office. This property interest is derived from, among other things, OAC 120-1-06.

106. OAC 120-1-06 creates a minimum level of funding, or a "floor," for the MCPDO which must be maintained to comply with constitutional standards and requirements for adequate representation under the Sixth Amendment.

107. OAC 120-1-06 removes any discretion of the Defendants to provide annual funding to the MCPDO below the minimum floor established by it, and thereby creates in Plaintiffs a legitimate expectation of compliance with OAC 120-1-06 which gives rise to a property interest.

108. Such property interest is subject to the protections afforded by the Fourteen Amendment.

109. Defendants have deprived Plaintiffs and Class Members of their property interest in their compensation, without due process of law.

110. Defendants have failed and refused to provide Plaintiff and Class Members with any procedural or substantive due process either before or after depriving them of their constitutionally protected rights.

111. Defendants acted under color of state law, and while acting under color of state law, subjected Plaintiffs to conduct that deprived Plaintiffs of rights and privileges under the U.S. Constitution, including but not limited to the 14th Amendment.

112. Defendants' conduct violated clearly establishes constitutional rights of which a reasonable person would know.

113. As a direct and proximate result of the actions of the Defendants, Plaintiffs and Class Members have suffered an unconstitutional deprivation of his rights to property and liberty without being afforded due process of law under the Fourteenth Amendment to the U.S. Constitution.

114. Pursuant to 42 U.S.C. 1983, Defendants are liable to Plaintiffs and Class Members as their policies, customs and practices caused the Constitutional violations. Among other things, the County Commissioners were officials with final policy-making authority for the County, made the deliberate choices described above, which represent official policies of the County for which the County is liable.

115. As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs and Class Members have suffered severe and substantial damages.

116. Plaintiffs and Class Members are entitled to recover compensatory damages in an amount to be determined at trial, plus costs and attorneys' fees.

117. Plaintiffs and Class Members are further entitled to equitable relief, including declaratory and injunctive relief requiring Defendants to compensate them on an equal basis to similarly situated employees of the County Prosecutor's Office and to cease their deprivations of Plaintiffs' property interest.

**FIFTH CAUSE OF ACTION**
**42 U.S.C. §1983 – Violation of Sixth Amendment**

118. Plaintiffs incorporate the foregoing allegations as if fully restated here.

119. As set forth above, both the Ohio and U.S. Constitutions mandate the effective assistance of counsel for criminal defendants. These obligations are applicable to Defendants.

120. OAC Chapter 120, and specifically OAC 120-1-06, implement these constitutional requirements for the effective assistance of counsel, and establish minimum standards necessary for constitutional compliance.

121. As set forth herein, the named Plaintiffs are uniquely situated, have a concrete and definite interest arising from their special ongoing relationship with existing clients who are criminal defendants whom they represent which provides them standing to litigate these issues.

122. The annual reports of the Ohio Public Defender Commission clearly recognize the crisis of inadequate legal representation caused by inadequate funding of public defenders, clearly recognize and acknowledge that fulfillment of the parity requirement of OAC will help to remedy this problem.

123. No other person, including the clients of named Plaintiffs who are criminal defendants, has the ability or incentive to litigate these issues which will remain unresolved if Plaintiffs are not found to have standing to litigate them.

124. This means the issue of inadequate funding and compensation of public defenders in Montgomery County, and inadequate legal representation resulting from it, will continue unresolved and uncorrected.

125. Defendants have violated OAC 120-1-06 with their systemic and continuing refusal to compensate employees of the MCPDO in parity with the MCPO. By doing so, Defendants

violate the Sixth Amendment to the U.S. Constitution and Section 10, Article I of the Ohio Constitution, as well as the other rights of the named Plaintiffs described herein.

126. Plaintiffs and Class Members are entitled to seek relief for their clients for these constitutional violations by Defendants.

127. Plaintiffs and Class Members are entitled to a judgment declaring their rights under OAC 120-1-06 and declaring Defendants' actions unlawful and constitutionally deficient, and injunctive relief requiring Defendants to comply with OAC 120-1-06 and otherwise comply with their constitutional obligation to provide effective assistance of counsel to indigent criminal defendants.

128. Plaintiffs and Class Members are also entitled to recover their attorneys' fees and costs pursuant to 42 U.S.C. §1983.

## SIXTH CAUSE OF ACTION
## Violation of Ohio Law

129. Plaintiffs incorporate the foregoing allegations as if fully restated here.

130. Defendants are legally obligated to compensate Plaintiffs in compliance with OAC 120-1-06 and similar regulatory and legal requirements.

131. Defendants have failed and refused to provide Plaintiffs with compensation substantially equivalent to their counterparts in the County prosecutor's office, in violation of Ohio law.

132. Named Plaintiffs herein and their current clients who are criminal defendants are within the class of persons that OAC 120-1-06 was intended to protect, and for whose benefit that provision was intentionally created, and it is consistent with Ohio's legislative scheme of funding for public defenders to imply a remedy for plaintiffs here.

133. Plaintiffs and Class Members have suffered damages as a proximate result of Defendants' conduct.

134. Plaintiffs and Class Members are entitled to recover compensatory damages in an amount to be determined at trial, plus punitive damages, costs and their attorneys' fees.

135. Plaintiff and Class Members are also entitled to equitable relief, including, but not limited to, a declaration that Defendants have violated OAC 120-1-06, back-pay, and injunctive relief requiring Defendants to compensate Plaintiffs in parity with employees of the County Prosecutor's Office.

**SEVENTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**

136. Plaintiffs incorporate the foregoing allegations as if fully restated here.

137. Plaintiffs/Class Members and Defendants, and specifically the Commission, had a special relationship of trust.

138. Defendants, and specifically the Commission, had a fiduciary duty to negotiate for Plaintiffs and Class Members in good faith, and to ensure Plaintiffs and Class Members were compensated in parity with employees of the MCPO, in compliance with OAC 120-1-06.

139. Defendants, and specifically the Commission, represented to Plaintiffs and Class Members they were being compensated in parity with employees of the MCPO and in compliance with OAC 120-1-06.

140. Plaintiffs and Class Members relied upon this fiduciary relationship, and these representations, in determining to accept or continue employment and the provision of services for Defendants.

141. Defendants, and specifically the Commission, breached their fiduciary duties to Plaintiffs and Class Members by, among other things, failing to negotiate and ensure Plaintiffs'

compensation was in parity with employees of the MCPO, and representing to Plaintiffs that their compensation was in parity an in compliance with OAC 120-1-06 when that was, in fact, not the case.

142. Plaintiffs and Class Members have suffered damages as a proximate result of Defendants' conduct.

143. Plaintiffs and Class Members are entitled to recover compensatory damages in an amount to be determined at trial, plus punitive damages, costs and their attorneys' fees.

**EIGHTH CAUSE OF ACTION**
**Writ of Mandamus**

144. Plaintiffs incorporate the foregoing allegations as if fully restated here.

145. This Court has the jurisdiction and power to issue a writ of mandamus pursuant to ORC Chapter 2731.01, et seq., as a result of its federal question and supplemental subject matter jurisdiction over this matter.

146. Moreover, this Court has the ability to issue a writ of mandamus pursuant to the federal All Writs Act, 28 U.S.C. §1651.

147. OAC 120-1-06 explicitly mandates that the compensation of County public defender attorneys shall be in parity with the compensation of attorneys in the County prosecutor's Office:

> 120-1-06 Facilities for a county or joint county public defender office
>
> The supporting staff, facilities, equipment, supplies, and other requirements needed to maintain and operate an office of a county or joint county public defender shall be sufficient to allow quality representation and shall be substantially equivalent to that provided for the county prosecutor's office. In applying this rule, the following criteria shall govern:

> (A) The salaries for public defender attorneys shall approximate and be in parity with the compensation received by a prosecutors with comparable years in practice and experience…

148. Therefore, Defendants have a clear legal duty and obligation to compensate attorneys in the Public Defender's office in parity with the compensation received by attorneys in the Prosecutor's office, and Plaintiffs and Class Members have a clear legal right to require Defendants to enforce and comply with this legal mandate.

149. As set forth above, Plaintiffs and Class Members have suffered, and will continue to suffer, substantial and irreparable harms for which no plain and adequate legal remedy exists if Defendants do not take the actions necessary to comply with OAC 120-1-06.

150. Accordingly, pursuant to O.R.C. §2731.01, et seq., and/or the All Writs Act, Plaintiffs are entitled to a writ from this Court requiring Defendants to take all actions necessary to comply with OAC 120-1-06.

## NINTH CAUSE OF ACTION
## Declaratory and Injunctive Relief

151. Plaintiffs incorporate the foregoing allegations as if fully restated here.

152. A real and justiciable controversy exists between the Parties concerning, among other things, Defendants failure to compensate Plaintiffs and Class Members in parity with and on an equal basis to similarly situated employees of the MCPO, Defendants' compliance with OAC 120-1-06, the Equal Protection and Due Process Clauses of the United States Constitution, and the constitutional right to the effective assistance of counsel pursuant to the Ohio and United States Constitution.

153. Plaintiffs and Defendants hold antagonistic claims that can only be resolved by a declaratory judgment. Indeed, Defendants have failed and refused to correct past pay disparities,

and continue to pay Plaintiffs and Class Members significantly less than employees of the Prosecutor's Office.

154. Plaintiffs and Class Members are entitled to a declaratory judgment pursuant to 28 U.S.C. §2201.

155. Plaintiffs and Class Members seek a declaration that, among other things, Defendants have and continue to violate OAC 120-1-06, the Equal Protection and Due Process Clauses of the United States Constitution, and the constitutional right to the effective assistance of counsel pursuant to the Ohio and United States Constitution by failing to compensate Plaintiffs and Class Members in parity with employees of the Prosecutor's Office.

156. In addition, Plaintiffs and Class Members have and continue to suffer substantial and irreparable harm.

157. A violation of constitutional rights always constitutes irreparable harm.

158. In addition, irreparable harm exists because the failure to pay employees of the Public Defender's office in parity with employees of the Prosecutor's Office makes the ability to recruit, hire, and retain employees in the Public Defender's office more difficult, harms morale, and harms the ability of indigent criminal defendants to obtain adequate and effective counsel.

159. In addition, without the additional compensation and benefits to which they were required to be paid in parity with employees of the Prosecutor's Office, Plaintiffs and Class Members have suffered other loss of quality of life, including, for example, having less money or available credit to pay for food, medicine, housing and other necessities than they otherwise would have had if they had been paid in compliance with OAC 120-1-06.

160. The substantial and irreparable harms suffered by Plaintiffs and Class members can be remedied by the back-payment of compensation and other benefits to which they were entitled.

The retroactive payment of compensation and benefits to Plaintiffs and Class members is the most plain, adequate, and complete remedy available.

161. In addition, further irreparable harm can be avoided by enjoining Defendants from violating, and requiring them to compensate Plaintiffs and Class members, in substantial parity with employees of the Prosecutor's office in accordance with OAC 120-1-06 and the Ohio and U.S. Constitutions.

162. The requested injunction is also in the public interest as it requires Defendants to comply with the U.S. and Ohio Constitutions.

## **Prayer for Relief**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class defined herein;

B. Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiffs and the Class and against Defendants;

D. Awarding compensatory damages to Plaintiffs and the Class;

E. Awarding punitive damages to Plaintiffs and the Class;

F. Declaring that Defendants violated OAC 120-1-06 and the Ohio and U.S. Constitutions by failing to compensate Plaintiffs and the Class in parity with their counterparts in the County Prosecutor's Office, and Defendants' actions are in derogation of the law and violate their clear statutory duties;

G. Mandatorily enjoining and ordering Defendants and Defendants' officers, employees, and agents, all persons acting in concert or participation with any Defendant, or under any Defendant's supervision, direction, or control to pay backpay to Plaintiffs and the Class to bring their compensation in parity with employees of the Prosecutor's Office, to pay Plaintiffs and the Class in parity and in compliance with OAC 120-1-06 and the Ohio and U.S. Constitutions going forward, and

H. Ordering pursuant to O.R.C. § 2731.01, *et seq*. Defendants, on behalf of the State of Ohio, to immediately take all actions necessary to bring Defendants in compliance with OAC 120-1-06 for prior periods and to comply with OAC 120-1-06 going forward;

I. Awarding Plaintiffs and the Class attorneys' fees and costs, including interest thereon, as allowed or required by law;

J. Granting all such further and other relief as this Court deems just and appropriate.

Dated: October 24, 2025

Respectfully submitted,

*/s/W. Kelly Lundrigan*
W. Kelly Lundrigan (0059211)
Nicole M. Lundrigan (0075146)
LUNDRIGAN LAW GROUP CO, LPA
Zimcom Building
1080 Nimitzview Drive, Suite 201
Cincinnati, Ohio 45230
Phone (513) 340-0112
Fax (513) 826-9335
klundrigan@lundrigan-law.com
nlundrigan@lundrigan-law.com

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Andrew M. Engel (0047371)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539
(216) 373-0536 e-fax
notices@dannlaw.com

*Attorneys for Plaintiffs and the Putative Class*

JURY DEMAND

Plaintiffs demand a trial by jury on all issues presented in this case.

*/s/ Marc E. Dann*
Marc E. Dann (0039425)